## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua Cameron Hanes, | Case No. 23-cv-1191 (SRN/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Sherburne County Jail; MenD, Inc.; Joel Brott, Sheriff; Thomas Zerwas, Captain; Pat Carr, Commander; Deanna McMasters, Nurse; Diana Van DerBeek, Director of Nursing; and John Doe 1 and 2, | |
| Defendants. | |

Joshua Cameron Hanes, Reg. No. 45224-509, FMC Rochester, P.O. Box No. 4000, Rochester, MN 55903, Pro Se.

Ashley Marie Ramstad and Jason M. Hiveley, Iverson Reuvers, 9321 Ensign Avenue S., Bloomington, MN 55438, for Defendants Sherburne County Jail, Joel Brott, Thomas Zerwas, and Pat Carr.

Suzanne L. Jones, Gordon Rees Scully Mansukhani, LLP, 80 S. 8th St., Ste 3850, Minneapolis, MN 55402, for Defendants Deanna McMasters and Diana Van DerBeek.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss ("County Defendants' Motion to Dismiss") [Doc. No. 34] and Motion to Stay Discovery [Doc. No. 41] filed by Defendants Sherburne County Jail, Joel Brott, Thomas Zerwas, and Pat Carr, and on the Motion to Dismiss ("Healthcare Defendants' Motion to Dismiss") [Doc. No. 56] filed by

Defendants McMasters and Diana Van DerBeek. Based on a review of the files, submissions, and proceedings herein, and for the reasons set forth below, the Court respectfully grants the County Defendants' motion to dismiss, grants the Healthcare Defendants' motion to dismiss, and denies as moot the motion to stay discovery.

## I.    BACKGROUND

### A.    Facts As Alleged in the Complaint

Mr. Hanes was a patient at Regions Hospital when he was arrested and transferred to the Ramsey County Workhouse. (Compl. [Doc. No. 1] ¶ 12.) At the time he was arrested, Mr. Hanes was recovering from surgery after sustaining multiple gunshot wounds. *Id*. In addition to the surgery on his leg, the gun shot injuries severely restricted his use of his right arm and hand. *Id*. ¶ 30. In an April 25, 2021 discharge summary following the surgery, a physician wrote that Mr. Hanes "may set his leg down for balance only, otherwise no weightbearing on the affected limb(s) until [Mr. Hanes's] care provider tells [him] to do so." *Id*. ¶ 13. He also received orders from physicians to use special mobility equipment and supplies, including a "wheelchair, sliding board, walker, foam elevation wedges, transfer belt, and shower chair." *Id*. ¶ 15.

When Mr. Hanes arrived at the jail, he was transferred to the booking area without wheelchair or nursing assistance. *Id*. ¶ 24. An officer in the booking area noticed Mr. Hanes's condition and got him a wheelchair. *Id* ¶ 25. The officer then notified the jail health care services of Mr. Hanes's medical condition. *Id*. A nurse, Defendant Deanna McMasters, then arrived and conducted a medical evaluation on him. *Id*. ¶ 26. She confiscated his prescribed medication, advising him that the jail does not administer what

appears to be an opioid medication. *Id*. She then provided Mr. Hanes with wedges, a walker, and a leg lifter, but not a transfer board. *Id*. He was placed in an isolation housing unit, where he experienced pain his first night and yelled until a sergeant received permission from the night doctor to provide him with Ibuprofen and Tylenol. *Id*. ¶¶ 27–28.

Initially at the jail, Mr. Hanes did not receive any daily living assistance, including assistance with transfers to the shower or toilet and with changing his dressings. *Id*. ¶ 29. He was allegedly informed by the medical staff that there were "not enough staff to take care of his personal needs," and told that "he had to take care of himself." *Id*. ¶ 31. He was also informed that his pain medication would be reduced to three times per day in order to transition him off of his prescribed medication, which the jail was unwilling to administer. *Id*. ¶ 29.

On May 27, 2021, Mr. Hanes was taken to see a new physician at Health Partners. *Id*. ¶ 33. The physician ordered that he be provided with assistance for "transferring, particularly to and from the bathroom and for toileting if needed." *Id*. On June 6, 2021, a PCA was assigned to assist him every other day with a shower. *Id*. ¶ 35. Mr. Hanes alleges that the PCA was restricted by the jail from providing him with any further assistance. *Id*. ¶¶ 35–36.

On June 29, 2021, after falling in his pod, Mr. Hanes was taken to the emergency room. *Id*. ¶¶ 36–37. The treating physician noted that his leg "looked like it is not healing properly." *Id*. ¶ 37. For some time after that appointment, Mr. Hanes told medical staff that his leg was "bending out" when pressure was applied to it. *Id*. ¶ 38. He alleges that the medical staff responded that he was "just seeing things." *Id*. At some point in September,

2021, a physical therapist noticed the bending in his leg and stopped his therapy session to call an ambulance. *Id*. ¶ 39. Mr. Hanes was brought to an emergency room and taken to see his primary care provider the next day, who ultimately informed him that they needed to perform additional surgery on his arm and leg in order to correct issues that had developed during the healing process. *Id*. ¶ 40.

### B.    Procedural History

On April 21, 2023, Mr. Hanes commenced this lawsuit under 42 U.S.C. § 1983, alleging a violation of his constitutional rights. He named as defendants the jail (SCJ), the Sherburne County Sheriff (Joel Brott), the jail captain (Thomas Zerwas), the medical company contracted by the jail (MenD Inc.), two nurses employed by MenD, Inc. (Deana McMasters and Diana Van DerBeek), Commander Pat Carr, and two employees of the U.S. Marshal Service (John and Jane Doe).

On July 19, 2023, Magistrate Judge Leo I. Brisbois granted Mr. Hanes's motion to proceed in forma pauperis ("IFP"). ("July 19, 2023 Order" [Doc. No. 12].) Upon receipt of completed U.S. Marshals Service forms from Mr. Hanes, Magistrate Judge Brisbois ordered the Clerk of Court to seek waiver of service from each defendant. *Id*. Magistrate Judge Brisbois also denied Mr. Hanes's request for court appointed representation in that same order, and denied his second request for counsel on September 29, 2023. ("September 29, 2023 Order" [Doc. No. 32].)

On August 31, 2023, the Court received executed waivers of service by Defendants SCJ, Carr, Brott, and Zerwas (collectively, "County Defendants") [Doc. Nos. 17–20]. On

December 26, 2023, the Court received executed waivers of service from Defendants McMasters and Van DerBeek [Doc. Nos. 78, 79].

On October 2, 2023, the County Defendants filed a motion to dismiss Mr. Hanes's complaint for failure to state a claim [Doc. No. 34]. On October 9, 2023, the County Defendants also filed a motion to stay discovery pending resolution of their motion to dismiss [Doc. No. 41]. On November 6, 2023, Defendants McMasters and Van DerBeek filed a motion to dismiss for insufficient service of process and failure to state a claim [Doc. No. 56].

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    42 U.S.C. § 1983

Mr. Hanes alleges in this case that the Defendants violated his constitutional rights. 42 U.S.C. § 1983 allows litigants to bring suit against any person who, under the color of state law, subjects them to a deprivation of their constitutional rights. To state a claim under § 1983, a litigant must demonstrate "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived him of a constitutionally protected federal right." *De Rossitte v. Correct Care Solutions, LLC*, 22 F.4th 796, 802 (8th Cir. 2022) (quoting *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). To state a cognizable Eighth Amendment violation, an inmate must demonstrate "(1) an objectively serious medical

5

need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it." *East v. Minnehaha County*, 986 F.3d 816, 820 (8th Cir. 2021); *see id.* ("It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").

### 2. Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *See Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). The Court ordinarily does not consider matters outside of the pleadings on a Rule 12(b)(6) motion. *Armstrong v. City of Minneapolis*, 525 F. Supp. 3d 954, 961 (D. Minn. 2021). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged must have enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court liberally construes the pleadings of a pro se party, but does not assume facts that are not alleged. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

### B. Motion to Dismiss For Failure to State a Claim[1]

Because the underlying facts in this lawsuit occurred during Mr. Hanes's pretrial detention, his right to medical care arises under the Due Process Clause of the Fourteenth

---

[1]     The issue of service is now moot as to Defendants McMasters and Van DerBeek. (*See* [Doc. Nos. 78, 79] waiving service.)

Amendment. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). Although the claim is rooted in the Fourteenth Amendment, the Court applies the "deliberate indifference" standard that governs claims brought by convicted inmates under the Eighth Amendment. *Id*. No defendant in this case disputes that Mr. Hanes suffered an objectively serious medical need [Doc. Nos. 37 at 10, 57 at 13]. The Court thus limits its analysis to whether Mr. Hanes adequately alleged that the defendants were deliberately indifferent to his medical needs. *Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2023).

A showing of deliberate indifference requires a mental state "akin to criminal recklessness," which is "more than negligence, more even than gross negligence." *Jackson*, 756 F.3d at 1065. An inmate or detainee must demonstrate that a defendant's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id*. at 1066 (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997)); *also Smith*, 73 F.4th at 600 ("The evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk.") (citation removed, emphasis in original).

### 1.     Defendant Sherburne County Jail

The Eighth Circuit has instructed that "county jails are not legal entities amenable to suit." *Owens v. Scott County Jail*, 328 F.3d 1026, 1026 (8th Cir. 2003) (per curium). Defendant SCJ argues that it must be dismissed from this case as a matter of law, and Mr. Hanes concedes that dismissal is appropriate on that basis. ([Doc. No. 52] at 3.) Thus, the motion to dismiss is granted with respect to Defendant SCJ.

### 2.    Healthcare Defendants

Mr. Hanes alleges that the Healthcare Defendants were deliberately indifferent to his medical needs. "It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody." *Dadd v. Anoka County*, 827 F.3d 749, 756 (8th Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42 (1988)). "The constitutional obligation to provide medical care to those in custody may be violated when officials intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed." *Id.* (internal quotations omitted). Incompetent or inadequate care may constitute deliberate indifference "where the treatment is so inappropriate as to evidence intentional maltreatment or refusal to provide essential care." *Hancock v. Arnott*, 39 F.4th 482, 488 (8th Cir. 2022) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997)). That said, "[t]he word 'may' leaves room for consideration of the specific facts and circumstances of the case, including any precautionary measures [the medical staff] *did* take." *Leonard v. St. Charles County Police Department*, 59 F.4th 355, 363 (8th Cir. 2023). And it is "well-established that 'an inmate is not entitled to any particular course of treatment.'" *Id.* at 361 (quoting *Dulany*, 132 F.3d at 1240); *also Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (disagreement as to the proper drug does not establish deliberate indifference).

Specifically, Mr. Hanes alleges that the Healthcare Defendants confiscated his opioid pain medication according to a jail policy restricting that medication, and then began tapering his dosage in order to "detox" him.

While a decision to deny an inmate's access to prescribed medication based on a uniform jail policy may constitute deliberate indifference to a serious medical need, an individualized decision and plan to taper down use of a prescribed addictive substance typically does not.[2] *See Gross v. Dudley*, No. 3:21-cv-805, 2022 WL 16922819, at *4–5 (E.D. Va. Nov. 14, 2022) (distinguishing between cases where jails refuse to prescribe opioids based on a uniform policy and cases where medical professionals made a decision to taper down opioids and offer alternative, non-opioid medications out of concern for the individual inmate's health and risk of addiction, and granting summary judgment to jail medical staff who declined to prescribe opioids to the plaintiff based on their assessment of his needs); *Strahan v. Rottnek*, No. 4:13-cv-448. 2015 WL 249448, at *5 (E.D. Mo. Jan. 20, 2015) (finding that a policy of denying narcotic prescription medication to inmates without any medical determination regarding the individual plaintiff's need for the medication was a triable constitutional violation, and denying summary judgment).

Courts thus routinely decline to find deliberate indifference on the part of jail medical staff who decline to continue prescribing opioids to inmates, so long as they do so after weighing the risks and benefits to the individual patient. *See May v. Bunting*, No. 22-cv-3198, 2023 WL 3995663, at *1–2 (D. Kan. June 14, 2023) (finding no constitutional

---

[2]     The Eighth Circuit has questioned, but not decided, whether constitutional liability may flow from a jail's narcotics-free medication policy. *McAdoo v. Martin*, 899 F.3d 521, 524 n.3 (8th Cir. 2018) ("Sergeant Martin and Officer Cash have not appealed—and therefore we do not consider—whether the district court properly found them guilty of unconstitutional deliberate indifference for following the Jail's narcotics-free policy without inquiring whether the emergency room physician who prescribed an opioid pain medication was cognizant of, and responsive to, well-recognized opioid addiction issues.").

violation where the oncologist explained to the plaintiff that opiates are not a good long-term solution for chronic pain and recommended a different treatment course); *Thomas v. Wolf*, 832 Fed. Appx. 90, 93 (2d. Cir. Nov. 9, 2020) ("[T]he mere fact that Dr. Wolf declined Thomas's requests for drugs more powerful (and potentially more addictive) than ibuprofen is insufficient to establish a culpable state of mind."); *Lockett v. Bonson*, 937 F.3d 1016, 1024–25 (7th Cir. 2019) (a prison nurse who administered Tylenol #3 to an inmate despite an external doctor's recommendation of oxycodone, after considering the inmate's own risk and history of addiction, did not violate the inmate's constitutional rights); *Hughes v. Infante*, 5:18-cv-5090, 2019 WL 2995924, at *3 (W.D. Ark. July 9, 2019) (the jail physician's decision to administer pain medication other than Tramadol, given the plaintiff's reported history of prescription drug abuse, was not unconstitutional).

Here, Mr. Hanes concedes that during his stay at the Jail, he was tapered off of the prescribed opioids and provided instead with consistent alternative pain medication. Taking the facts as alleged, the Healthcare Defendants' decision to taper down oxycodone for Mr. Hanes is not evidence of deliberate indifference, and does not rise to the level of a constitutional violation. *See Phillips*, 437 F.3d at 791.

Mr. Hanes further alleges that the Healthcare Defendants were deliberately indifferent to his serious medical needs by failing to provide assistance for him in daily activities, including showering and toileting. To succeed on his claim of deliberate indifference, Mr. Hanes must plausibly allege facts of intentional maltreatment. *Hancock*, 39 F.4th at 488. The Court finds that he has clearly not done so here. The claim against the Healthcare Defendants is accordingly dismissed.

### 3.    Defendants Brott, Carr, and Zerwas

Mr. Hanes does not allege that Defendants Brott, Carr, and Zerwas had any direct or personal role in his alleged deprivation of medical care. Rather, Mr. Hanes argues that each had oversight and supervisory responsibilities as a part of their official capacities, and they are accordingly liable for the deliberate indifference of the Healthcare Defendants.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Defendants Brott, Carr, and Zerwas are agents of Sherburne County, which is a legal entity under Minnesota law. *See* Minn. Stat. § 373.01. Accordingly, the Court construes Mr. Hanes's pleadings against these defendants as official capacity claims under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). *See Graham*, 473 U.S. at 167, n.14 (the "course of proceedings" indicates the nature of the liability sought to be imposed).

Under *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Rather, liability for constitutional violations "will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Armstrong*, 525 F. Supp.3d at 962 (quoting *Bolderson v. City of*

*Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). Before a municipality can be held liable, there must be an unconstitutional act by a municipal employee. *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005).

As the Court has already explained, Mr. Hanes has not plausibly alleged a constitutional violation based on the medical care he received at the jail. Without a plausibly pled constitutional violation, *Monell* liability cannot attach. *Smith*, 73 F.4th at 601–02. Thus, his claim against Defendants Brott, Carr, and Zerwas must be dismissed.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

A.  The County Defendants' Motion to Dismiss [Doc. No. 34] is **GRANTED.**

B.  The Healthcare Defendants' Motion to Dismiss [Doc. No. 56] is **GRANTED**.

C.  The Motion to Stay Discovery [Doc. No. 41] is **DENIED as Moot**.

D.  The Complaint [Doc. No. 1] is hereby **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 29, 2024          /s/ Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  United States District Judge